This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41080**

**CHERYL DURAN, Individually and as
Parent and Next Friend of K.D., minor,
and BENJAMIN DURAN, Individually and
as Parent and Next Friend of K.D., minor,**

      Plaintiffs-Appellees,

v.

**BOARD OF EDUCATION OF POJOAQUE
VALLEY SCHOOL DISTRICT,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Maria Sanchez-Gagne, District Court Judge**

Bruce E. Thompson Law Firm, P.C.
Bruce E. Thompson
Albuquerque, NM

for Appellees

Quiñones Law Firm LLC
Carlos M. Quiñones
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant, the Board of Education of Pojoaque Valley School District, appeals the district court's judgment in favor of Plaintiffs Cheryl and Benjamin Duran, as parents and next friends of their minor daughter, K.D., who suffered injuries when another

student attacked her at school. Defendant argues the district court erred in determining that immunity was waived under the building waiver, NMSA 1978, § 41-4-6(A) (2007), of the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -27, -30 (1976, as amended through 2020), and in awarding Plaintiffs $400,000. We affirm.

**BACKGROUND**

**{2}** We briefly set out the facts, as found by the district court, and the relevant procedural history. Plaintiff Cheryl Duran spoke with Jonathan Steven Baca, the principal of Pojoaque Valley Schools Sixth Grade Academy (the Academy), about concerns she had regarding A.P., who was enrolled as a sixth-grade student at the Academy and who had been making threats online against K.D., another sixth-grade student at the Academy. Although Principal Baca told Ms. Duran that he would "make sure that nothing was going to happen," he later testified that he believed her concerns lacked merit because she did not have first-hand evidence of the threats. That same week, one of K.D.'s teachers reported to Principal Baca that two other sixth-grade students had informed her that A.P. was threatening to fight K.D. Principal Baca did not investigate the reported threats as required by the Academy's own policies. Three days after Ms. Duran spoke with Principal Baca, A.P. slammed K.D.'s head against a cafeteria table three times. K.D. suffered a traumatic brain injury that caused her to experience fatigue, continuous headaches, anxiety, decreased concentration, impaired memory formation, poor hand coordination, light sensitivity, and noise sensitivity. At the time of trial, more than two years after the attack, K.D. continued to suffer many of these symptoms.

**{3}** Plaintiffs sued Defendant for negligence and the case eventually proceeded to a bench trial. At the close of Plaintiffs' case, Defendant moved to dismiss or for a directed verdict pursuant to Rule 1-041(B) NMRA, arguing that its immunity from suit under the TCA was not waived by the building waiver in Section 41-4-6(A). The district court denied the motion. After receiving proposed findings of fact and conclusions of law from the parties, the district court entered its own findings and conclusions. The court determined that immunity was waived under Section 41-4-6(A) for Defendant's negligence, and awarded Plaintiffs $400,000—the maximum allowed under the TCA, § 41-4-19(A)(3)—for K.D.'s past and future pain and suffering, mental and emotional distress, and loss of enjoyment of life.

**DISCUSSION**

**{4}** On appeal, Defendant challenges both the district court's determination that immunity was waived and the amount of damages awarded to Plaintiffs.[1] Prior to

---

[1]Plaintiffs advance an issue in their answer brief regarding Defendant's spoliation of evidence and discovery violations, and request that we remand the case to the district court for a hearing to impose monetary sanctions for the same. Plaintiffs did not take a cross-appeal and the issue they raise does not fall within Rule 12-201(C) NMRA's permissive review in the absence of a cross-appeal. We therefore decline to review this issue. *See Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶ 33, 142 N.M. 359, 165 P.3d 1135.

addressing these challenges, we set forth the applicable standard of review and, in view of this standard, discuss the deficiencies in Defendant's appellate briefing.

## I.  Standard of Review and Deficiencies in Defendant's Briefing

**{5}**     As an initial matter, although Defendant purports to challenge both the district court's denial of its Rule 1-041(B) motion and the district court's ultimate findings, conclusions, and judgment in favor of Plaintiffs, our review is of the latter. *Cf. Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 17, 124 N.M. 111, 946 P.2d 1122 ("Because Rule 1-041(B) leaves the fact finding to the trial judge, we must view the evidence in the light most favorable to support the findings and judgments of the trial judge." (text only) (citation omitted)); *State v. Myers*, 2009-NMSC-016, ¶ 14, 146 N.M. 128, 207 P.3d 1105 (providing that "when a case proceeds to trial, error resulting from an improperly denied pretrial motion is not reversible for the result becomes merged in the subsequent trial," and, under such circumstances, the appellate court reviews the "judgment . . . , rather than the denial of [the appellant's] pre-trial motion to dismiss" (internal quotation marks and citation omitted)).

**{6}**     In challenging the district court's immunity determination and damages award, Defendant contests the district court's factual findings, as well as legal conclusions. "We review the district court's findings of fact for substantial evidence." *Giant Cab, Inc. v. CT Towing, Inc.*, 2019-NMCA-072, ¶ 6, 453 P.3d 466. We review the district court's application of law to the facts, as well as other legal questions, de novo. *See id.*; *see also Godwin v. Mem'l Med. Ctr.*, 2001-NMCA-033, ¶ 23, 130 N.M. 434, 25 P.3d 273 ("We review de novo the applicability of the [TCA].").

**{7}**     Our substantial evidence standard of review warrants additional discussion. Under this standard, "we review the evidence in the light most favorable to [the judgment], including drawing all inferences and resolving all credibility determinations in favor of that decision." *Chavez v. Bd. of Cnty. Comm'rs of Curry Cnty.*, 2001-NMCA-065, ¶ 13, 130 N.M. 753, 31 P.3d 1027. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted); *see also State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (internal quotation marks and citation omitted)). When challenging findings on appeal, it is incumbent upon the appellant to (1) attack the contested findings directly, *see* Rule 12-318(A)(4) NMRA, and (2) set out the substance of *all* evidence supporting the district court's findings, *see* Rule 12-318(A)(3). *See State ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, 2022-NMCA-026, ¶¶ 26-28, 511 P.3d 329.

**{8}**     Defendant fails for the most part to comply with these mandates. To begin, instead of directly challenging the district court's findings of fact, Defendant's appellate briefing largely ignores these findings. "This approach is improper, ineffective, and

contrary to the Rules of Appellate Procedure." *Id.* ¶ 26. In particular, Defendant's summary of proceedings section tracks its proposed findings of fact, setting out only the evidence that supports these findings. This approach is carried through the argument section, in which Defendant maintains that its proposed findings are supported by the trial record. Defendant's requested findings, however, were never adopted by the district court—meaning the court found *against* Defendant on these matters. *See In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative."); *see also Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 22, 123 N.M. 60, 933 P.2d 859 ("When the trial court's findings of fact are supported by substantial evidence, . . . refusal to make contrary findings is not error."). As a result, Defendant's repeated suggestions on appeal that evidence supports its proposed findings is ineffective. *See Lerma v. Romero*, 1974-NMSC-089, ¶ 2, 87 N.M. 3, 528 P.2d 647 (holding that, where the appellants argued the district court erred in refusing requested findings but did not directly attack the district court's findings, the findings would not be reviewed on appeal).

**{9}** The correct course under our standard of review is to explain why the findings actually adopted by the district court are not supported by substantial evidence. *See Casias Trucking*, 2014-NMCA-099, ¶ 20. Under Rule 12-318(A)(3), "[a] contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition." The main purposes of this rule are to "fully apprise the reviewing court of the fact-finder's view of the facts and its disposition of the issues, and to help the court decide the issues on appeal." *Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 15, 115 N.M. 181, 848 P.2d 1108. The rule thus "imposes a duty upon an appellant, who seeks to challenge findings adopted below, to marshal *all of the evidence in support of the findings* and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the findings." *Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 18, 114 N.M. 755, 845 P.2d 849 (emphasis added). The appellant's summary of the evidence should be thorough enough that neither the reviewing court nor the appellee has to supplement it. *See Martinez*, 1993-NMCA-020, ¶ 13. When an appellant does not set forth the substance of the evidence—both favorable and unfavorable—bearing on the district court's findings, the appellant violates this rule and is bound by those findings. *See McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 32, 461 P.3d 930.

**{10}** We agree with Plaintiffs' assessment that, contrary to the above standard, Defendant's briefing "only contain[s] the narrow body of evidence favorable to [it]," "ignore[s] all unfavorable evidence," and with few exceptions, "makes . . . no specific attack on any finding of the district court." These deficiencies alone would warrant resolution of this appeal in Plaintiffs' favor. *See* Rule 12-318(A)(4) (requiring a "specific attack on any finding, or the finding shall be deemed conclusive"); *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 17, 137 N.M. 26, 106 P.3d 1273 ("Where an appellant fails to include the substance of all the evidence bearing upon a

proposition, this Court will not consider a sufficiency of the evidence challenge." (internal quotation marks and citation omitted)); *McDonald*, 2020-NMCA-020, ¶ 32 (same). We nevertheless briefly address Defendant's specific arguments in view of the foregoing standard of review.

## II.      Immunity Under the TCA Building Waiver

**{11}**      We understand Defendant to challenge both the district court's factual findings in support of, as well as its ultimate legal conclusion that, Defendant's immunity from suit under the TCA was waived by the building waiver in Section 41-4-6(A). We address these challenges in turn.

## A.      The District Court's Factual Findings

**{12}**      Turning to our substantial evidence review, Defendant directly challenges only two of the district court's findings: (1) that "Principal Baca did not take any action related [to] either of the two reports he received," and (2) that the "Academy created an unsafe condition for its students by failing to follow the school violence prevention policy."[2] As for its attack on the first finding, Defendant, contrary to the above standard, focuses only on the evidence that detracts from the finding and fails to address evidence in the record that tends to support it, including Principal Baca's own testimony that he did not investigate the reports. *See Maloof*, 1992-NMCA-127, ¶ 18.

**{13}**      Defendant's challenge to the second finding fairs no better. Instead of directly attacking this finding, as required by Rule 12-318(A)(4), Defendant relies on its proposed findings, which the district court rejected. Specifically, Defendant contends that "A.P. did not pose a threat or danger to any other students" aside from K.D. and "Defendant did not violate its bullying policies," and argues that the trial record supports its proposed findings. As discussed, this approach is ineffective in establishing the district court's findings are unsupported by substantial evidence. *See Lerma*, 1974-NMSC-089, ¶ 2. Moreover, Defendant has not marshaled all of the evidence in support of the district court's actual finding that the "Academy created an unsafe condition for its students by failing to follow the school violence prevention policy," or demonstrated why this evidence is insufficient to support that finding. *See Maloof*, 1992-NMCA-127, ¶ 18. Specifically, Defendant ignores testimony from the Academy's school safety officer that supports a reasonable inference that the Academy's failure to follow its behavioral threat assessment plan and bullying policy created a dangerous condition for the entire school population.

**{14}**      In light of its presentation on appeal, Defendant is bound by the district court's findings that "Principal Baca did not take any action related [to] either of the two reports

---

2The district court mislabeled this latter finding as a "conclusion of law." We nonetheless treat it as a finding of fact. *See Sheraden v. Black*, 1988-NMCA-016, ¶ 14, 107 N.M. 76, 752 P.2d 791 (providing that "[a] mislabeled finding of fact may nevertheless be treated as a finding, even though it may appear under a 'Conclusion of Law' heading"); *see also Apodaca v. Payroll Express, Inc.*, 1993-NMCA-141, ¶ 9, 116 N.M. 816, 867 P.2d 1198 (treating a mislabeled conclusion as a finding).

he received" and the "Academy created an unsafe condition for its students by failing to follow the school violence prevention policy," as well as the district court's remaining findings, which were not specifically challenged by Defendant. *See* Rule 12-318(A)(3), (4); *Crutchfield*, 2005-NMCA-022, ¶ 17; *McDonald*, 2020-NMCA-020, ¶ 32.

## B.     The District Court's Legal Conclusions

**{15}**    Next, we address Defendant's argument that the district court erred by concluding that its immunity from suit under the TCA was waived by Section 41-4-6(A)'s building waiver. Section 41-4-6(A) provides,

> The immunity granted pursuant to [Section 41-4-4(A) of the TCA] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building . . . .

Our Supreme Court in *Sanders v. New Mexico Corrections Department*, 2024-NMSC-027, 562 P.3d 572, recently confirmed the breadth of the building waiver: "The government's liability under the TCA is based upon the traditional tort concepts, § 41-4-2(B), and so we infer that the waiver of liability in Section 41-4-6(A) incorporates the concepts of premises liability found in our case law." *Sanders*, 2024-NMSC-027, ¶ 45 (text only) (citation omitted). As particularly relevant to this appeal, the Court in *Sanders* reaffirmed its earlier decision in *Upton v. Clovis Municipal School District*, 2006-NMSC-040, 140 N.M. 205, 141 P.3d 1259, explaining that "[t]he building waiver extends to negligence arising from the failure to follow protocols and procedures that gives rise to a dangerous condition affecting the general public or a class of users of the premises." *Sanders*, 2024-NMSC-027, ¶ 47 (citing *Upton*, 2006-NMSC-040, ¶¶ 23-24). *Sanders* summarized the *Upton* decision:

> In *Upton*, a fourteen-year-old girl died following a severe asthma attack that occurred after she was required to participate in a physical education class despite her special medical needs of which the school had been made aware. The plaintiff parents sued the school district claiming the district's negligence created a dangerous condition for the child and other similarly situated students.
>
> The *Upton* Court reversed the grant of summary judgment in favor of the defendants, concluding that the school failed to follow procedures specific to children with special medical needs; the school failed to appropriately respond to the child's medical distress; and these failures presented a dangerous condition to a particular class of people that use the building; specifically, the school's cascade of failures created a dangerous condition for all special-needs children. The Court's decision in *Upton* opened the door for claims alleging that government entities that engage in an act of negligent operation by failing to follow their own protocols and

procedures may be subject to negligence claims under the building waiver.

*Sanders*, 2024-NMSC-027, ¶¶ 47-48 (text only) (citations omitted). The *Upton* Court further considered the school district's contention that the complaint "amount[ed] to nothing more than a claim of negligent supervision of one student . . . , which does not rise to the level of a dangerous condition affecting students generally." 2006-NMSC-040, ¶ 15. In rejecting this contention, the Court explained that "the negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building, including the plaintiff." *Id.* ¶ 23. It was irrelevant, *Upton* concluded, that only one person was injured—what mattered was that "the risk posed was to a group of people using the . . . building." *See id.* ¶ 24.

**{16}**  We agree with Plaintiffs that, in light of the binding factual findings, this case falls squarely within the building waiver as enunciated in *Upton*. In an attempt to avoid this result, Defendant argues that *Upton* is inapplicable because "a single student is the only person allegedly endangered."[3] This, however, ignores the district court's finding that the Academy's failure to follow the school violence prevention policy "created an unsafe condition for its students." *See id.* ¶ 24. It further ignores the clear statement in *Upton* that waiver of immunity under Section 41-4-6(A) may occur even if a single student is injured so long as the defendant's negligence makes the premises potentially dangerous to the greater student population. *See Upton*, 2006-NMSC-040, ¶ 23. As Plaintiffs aptly observe, *Upton*'s holding is directly applicable because the Academy's failure to follow its violence prevention policy—like the school's failure to follow its policies for special needs students and emergency medical situations in *Upton*—endangered other Academy students, even though these students—like the other students in *Upton*—were not actually harmed in the instant case.

**{17}**  For these reasons, we find Defendant's attempt to distinguish *Upton* unpersuasive, and we accordingly reject Defendant's argument that the district court erred in concluding its immunity was waived under Section 41-4-6(A).

## III.    The Damages Award

**{18}**  Finally, Defendant makes various arguments as to why the district court's damages award of $400,000 was excessive. First, we understand Defendant to argue that the award was not supported by substantial evidence. As with its other sufficiency challenges, Defendant fails to directly attack any of the district court's relevant findings, *see* Rule 12-318(A)(4), and does not present the substance of all evidence supporting these findings, *see* Rule 12-318(A)(3). Instead, Defendant directs us to its requested findings, which the district court rejected, and points only to evidence favorable to its position. Again, this is ineffective in establishing the district court's findings are

---

[3]Defendant further argues that *Upton* should be limited to the specific, "extraordinary circumstances" of that case, such that immunity is waived only in situations where a school fails to follow policies related to special needs students or emergency medical situations. We do not read *Upton* so narrowly, particularly in light of our Supreme Court's recent explication of the building waiver in *Sanders*.

unsupported by substantial evidence, and we consequently conclude Defendant has waived any substantial evidence challenge to the district court's damages award. *See, e.g., Lerma*, 1974-NMSC-089, ¶ 2; *Crutchfield*, 2005-NMCA-022, ¶ 17; *McDonald*, 2020-NMCA-020, ¶ 32; *see also Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 19, 146 N.M. 853, 215 P.3d 791 ("[A]n appellant's argument that a verdict is excessive based on evidence that conflicts with evidence that supports the verdict will not aid the appellant.").

**{19}** Second, we understand Defendant also to argue that the district court's $400,000 damages award was excessive as a matter of law. In support, Defendant cites a single case, *Nava v. City of Santa Fe*, 2004-NMSC-039, 136 N.M. 647, 103 P.3d 571. In *Nava*, our Supreme Court affirmed a district court's remittitur of a jury verdict for emotional distress in a sexual harassment case from $285,000 to $90,250 where the district court determined "the jury's verdict was based upon either sympathy or an improper motive to punish [the d]efendant." *See id.* ¶¶ 17-18. In support, the district court found, among other things, that the plaintiff "presented no evidence of concrete special damages" and "received no professional mental health care." *See id.* ¶¶ 17-19. Defendant argues *Nava* bars the district court's award of $400,000 because, it contends, Plaintiffs likewise did not present evidence of concrete special damages, nor did K.D. receive professional mental health care. Defendant fails to explain, however, why *Nava* controls under the particular circumstances of this case—where the damages award was not based solely on emotional distress, but also included pain and suffering and loss of enjoyment of life, and where extensive evidence supported the damages award. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). We accordingly conclude that *Nava* does not govern this case.

**{20}** Lastly, Defendant complains the district court's damages award is excessive because it believes Plaintiffs stipulated at trial that they were not seeking past or future medical expenses, or future damages. Defendant does not provide a record citation to support its contention that Plaintiffs disclaimed future damages, and does not explain why Plaintiffs' stipulation regarding past and future medical expenses renders the district court's judgment erroneous, given the court did not award any such damages. We therefore reject this argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *see also Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm.

**{22}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**GERALD E. BACA, Judge**